KATHERINE THERESA DeVAULT,  )
      )
      Plaintiff/Appellee,    )     Appeal No.
      )     01-A-01-9806-CV-00270
v.      )
      )     Davidson Circuit
JAMES CANON DeVAULT, JR.,    )     No. 93D-3363
      )
      Defendant/Appellant.    )
      )

FILED

June 11, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CIRCUIT COURT FOR
DAVIDSON COUNTY
AT NASHSVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

LEW CONNER
JAMES H. DRESCHER
Stokers & Bartholomew, P.A.
424 Church Street, Suite 2800
Nashville, Tennessee  37219
    ATTORNEYS FOR PLAINTIFF/APPELLEE


KARLA C. HEWITT
Hatchett & Hewitt
211 Donelson Pike, Suite 4
Nashville, Tennessee  37214
    ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AS MODIFIED
AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

This appeal involves a dispute over child support for the parties' two minor children. The trial court denied the Father's petition to modify the support as it had been set in the final decree. In addition, the court placed a lien on two of the Father's properties and awarded fees to the Mother's attorney. On appeal, we affirm the court's decision with regard to child support and attorney fees. However, regarding the lien, we modify the trial court's decision such that a lien remains on only one of the Father's properties. Accordingly, the decision of the trial court is affirmed as modified and remand for further proceedings.

## I.

James Canon DeVault, Jr. ("the Father") and Katherine Theresa DeVault ("the Mother") were divorced by final decree filed April 13, 1995. The final decree ordered that custody of the parties' two children, twin boys, be joint and that the Mother be the primary physical custodian. With regard to child support, the court stated as follows:

> The court finds this an appropriate situation in which to deviate from the Guidelines with regard to child support. Both parents have their own successful businesses. Each has the ability to earn a substantial income for the support of themselves and the support of their children. From [the Father's] testimony he is not working like he has in the past, but the Court senses that he is going to start up. [The Father] is currently underemployed. Child support is hereby set at $800.00 per month.

Both parties appealed from the judgment of the trial court on various issues one of the Father's being the award of $800 per month in child support. The court of appeals found that there was insufficient evidence from which the trial court could have determined that the Father was underemployed and remanded the cause for determination of child support.

> We are of the opinion that the evidence does not preponderate in favor of the trial court's finding that the defendant is underemployed.

> The decision of the trial court as to child support is reversed and remanded. On remand, the trial court shall hear evidence on the amount of the defendant's income as defined in the guidelines and determine the correct net income amount. Thereafter, the court shall enter an order requiring defendant to pay child support equal to thirty-two percent of this net income as required by the guidelines.

*DeVault v. DeVault*, No. 01-A-01-9601-CV00012, 1996 WL 482968, at *7 (Tenn. App. 1996). The Father did not pursue this issue on remand to the trial court. Instead, he paid $800 per month in child support pursuant to the final decree for over a year until the time that he filed this petition to modify.

On November 4, 1997, the Father initiated the instant proceedings by filing a petition to modify which alleged that he had experienced a "drastic decrease in income" since the time of the final decree. He asserted that he was employed in the same capacity as he had been, a free lance photographer. However, he claimed that by no voluntary action of his own, he had earned approximately $12,000 in 1997 and that "he desperately need[ed] a reduction in child support payments for a period of approximately twelve months."

At the March 26, 1998 hearing, the Mother offered no evidence and the Father's only witnesses were himself, his current wife and his accountant. The Father testified that he is a self-employed professional photographer doing business as DeVault Photography. The Father claimed that as of 1997, he could no longer pay his living expenses plus child support without borrowing from his parents, credit card companies and mortgage companies. He testified that his income had been reduced due to various factors within the industry though he had taken numerous steps to increase his business. He presented a written statement indicating that his gross income through November 30, 1997 was $45,766 but his net was only $9,475. The Father offered no evidence of his gross income from his photography business for December 1997 nor did he offer any financial information for the first three months of 1998 prior to the trial.

The Father's other source of income is a piece of property with seven rental units. He presented a written statement for this rental property which

itemized the income and expenses for 1997 through November 30, 1997. The statement showed an almost $500 loss. The Father claimed that this property required significant expenses and that, due to an unusual amount of refurbishing in 1997, it was showing this loss.

At the hearing when asked what property he owned, the Father answered, "I own the apartment building with my wife Pamela and we own our own home." However, the Father indicated that he was solely responsible for the debt on the apartment building. He testified that he owed in excess of $340,000 to creditors. He stated that, other than sharing financial responsibility for his home with his current wife, he was solely responsible for all this debt. He testified that his home was worth approximately $200,000 with a mortgage of $125,000 and his rental property was worth $300,000 with a mortgage balance of $116,000. The Father did acknowledge that he had spent money fixing up his house as recently as December 1997.

The Father's final witness was Jim Harper, a certified public accountant who had kept the Father's books since the late 1970's. He testified that he had prepared the written statement showing a $9,475.20 net income for DeVault Photography as of November 1997 as well as the statement showing a $489.25 loss for the Father's rental property. He stated that the Father had given him the check stubs and bank statements and receipts and he had categorized them. The court clarified that the accountant was not guaranteeing the truth of the information upon which he was relying. Later, when the Father's attorney asked the witness if he believed that the information given to him by the Father was truthful, the Mother's attorney objected. The trial judge sustained the objection.

Following the hearing, the court issued a final order: "The petition to modify child support is dismissed for failure to state a claim upon which relief can be granted and due to the failure of the petitioner to establish facts upon which this [c]ourt would be empowered to reduce said support." The court found that the current amount of child support was consistent with a gross income of approximately $40,000 per year which is consistent with the amount the Father is able to earn. The court further found that the Father owns certain valuable

assets that can be used to secure his obligation to pay child support including equity in his home and rental property. The court thus placed liens on both pieces of property and ordered that they remain until the children reach the age of majority. Finally, the court ordered the Father to pay the Mother's attorney the sum of $2500 for the attorney fees and expenses and the court ordered the Father to pay court costs.

## II.

Initially, we point out that this was not a dismissal pursuant to Tennessee Rule of Civil Procedure 12.02(6) for the failure to state a claim for relief. The purpose of this rule is to test the sufficiency of the complaint, and it is consequently based upon the pleadings alone. *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. App. 1979); *Jacox v. Memphis City Bd. of Ed.*, 604 S.W.2d 872, 873 (Tenn. App. 1980). Both in its final order and in its ruling from the bench, the trial court used language indicative of Rule 12.02(6). However, the court's order followed a hearing during which the Father presented proof to support his petition for modification. In addition to the Rule 12.02(6) language, the court stated in the final order that the dismissal was "due to the failure of the petitioner to establish facts upon which this Court would be empowered to reduce said support." Moreover, from the bench, the trial judge stated that "[t]here was very little proof today. A lot talked about but nothing really that would substantiate a petition to reduce the child support as set." It is clear that the court misused the 12.02(6) language and that its decision was based upon its review of the evidence produced at the hearing.

Turning to the substantive issue of child support, these decisions are entrusted to the discretion of the trial court which is guided by the child support guidelines promulgated by the Department of Human Services pursuant to the Tennessee code. Tenn. Code Ann. § 36-5-101(e)(2) (Supp.1994). The guidelines apply to modifications of support as well as to the original decrees. *See Jones v. Jones*, 870 S.W.2d 281, 282 (Tenn. 1994). Appellate review of child support decisions is in accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure. Thus, we afford the trial court's factual findings a

presumption of correctness but do not extend that presumption to the trial court's legal construction of the guidelines. *Turner v. Turner*, No. 01A01-9506-CV-00255, 1997 WL 136448, at *6 (Tenn. App. 1997).

With regard to child support modification, the code provides that "upon application of either party, the court shall decree an increase or decrease of such allowance when there is found to be a significant variance, as defined in the child support guidelines[1] established by subsection (e), between the guidelines and the amount of support currently ordered unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed." Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1998). The guidelines state that a variance justifies "the modification of a child support order unless, in situations where a downward modification is sought, the obligor is willfully and voluntarily unemployed or underemployed." Tenn. Comp. R. & Reg. r. 1240-2-4-.02(3) (1994).

To reiterate, the court found in its final decree that the Father was underemployed. The court then set support at $800 per month without making a determination as to the Father's potential income as required by the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(d) (1994); *Herrera v. Herrera*, 944 S.W.2d 379, 387 (Tenn. App. 1996). The court of appeals reversed the trial court both as to the finding that the Father was underemployed and as to the amount of child support stating that "it is impossible to make the determinations necessary to deviate from the guidelines based on the information in the record of this case." *DeVault v. DeVault*, No. 01A01-9601-CV-00012, 1996 WL 482968, at *6 (Tenn. App. 1996). This court remanded the case for the trial court to hear evidence on the amount of the Father's income. However, the Father did not seek relief on remand. Instead, he paid $800 per month for over a year until he filed the instant petition to modify.

---

[1]"[A] significant variance shall be at least 15% if the current support is one hundred dollars ($100.00) or greater per month." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(3) (1994).

In the instant proceeding, the court noted from the bench that child support as set by the final decree "does reflect approximately $40,000 a year" in income which was "pretty much in keeping with [the Father's] ability to earn." Likewise, in its final order, the court stated "[c]hild support as currently set is consistent with a gross income of approximately $40,000 per year and that amount is consistent with [the Father's] ability to earn." It is clear that the trial court's finding with regard to the $40,000 figure was based upon the $800 per month child support that it had set in the final decree; in other words, the trial court's reasoning was that $40,000 is the amount of income that corresponds to an $800 monthly child support award such that if child support was set at $800 a month then the Father must have been able to make $40,000 per year. It was necessary for the trial court in this case to engage in such reverse reasoning since it had failed to make a factual determination of the Father's income at the time of the final decree and since the Father had failed to obtain such a determination from the trial court once the court's initial error was reversed and remanded.

On appeal in the case at bar, the Father contends that the trial court erred by failing to determine his current income based upon the proof presented at trial as required by the child support guidelines. He claims that the court based its award on the Father's earning potential rather than his actual income. It is the Father's position that the court erred by basing the award upon earning potential when it never found that the Father was voluntarily unemployed or underemployed as required by the Guidelines. The Father also contends that since the trial court never ascertained the Father's current income, it never reached the point where it could make a "significant variance" determination.

We find that the court's ruling was a based upon its finding that the Father failed to show his income was less than it was at the time of the original support order and thus failed to show a significant variance. In both the bench ruling and the final order, the court expressed its opinion that the Father had the *ability* to earn more income than he was showing. The court's conclusion seemed to be based upon its finding that the Father was manipulating his deductions to show a much smaller net income than he actually was receiving. During the hearing the court commented to the Father, "your testimony now is that you can't

command that income [that you previously enjoyed], so how do you pay your expenses? It doesn't jive. In other words, the same story today that you had last time you came in here, manipulation of expenses, so you want to try to explain that?"

We find that the evidence does not preponderate against the court's finding that the Father failed to show he was making less than $40,000. There was evidence that the Father had put money into renovating his rental property in 1997 and into fixing up his own home as recently as December of 1997. The court noted that the Father obviously had the "wherewithal" for such expenditures and that "maybe that should be dealt with by scaling it down instead of trying to scale down his child support." Furthermore, the Father presented scanty evidence on his own behalf. He only presented income and expense figures for 1997 through November of 1997 despite the fact that the hearing was held in March of 1998. He did not enter into evidence any tax returns but only written statements created by his accountant showing net business income from DeVault Photography and net loss from the rental property.

As stated, the trial court determined the $40,000 figure representing the Father's potential income from the monthly amount of child support, $800, as set by the final decree. The guidelines provide that "[i]f an obligor is willfully and voluntarily unemployed or underemployed, child support shall be calculated based on a determination of potential income, as evidenced by educational level and/or previous work experience." Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(d) (1994). It is clear from the previous reversal of the $800 amount on appeal that the trial court did not properly make this determination. However, the Father failed to pursue the relief that was available to him after this court reversed the final decree. His only relief now is to show a significant variance from the $40,000 by showing that he is making 15% less than $40,000. The Father has not carried his burden of proof with regard to showing a significant variance and thus he is not due a modification of child support. *See McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. App. 1992) (establishing that the party seeking modification in alimony or child support has the burden of

proof under the prior standard of "substantial and material change in circumstances").

## III.

The Father next argues that the trial court abused its discretion in awarding the Mother a lien against all of the Father's real property. The court imposed a lien against both the Father's home as well as his rental property "in order to secure [the Father's] obligations to pay child support." Section 36-5-103 of the code authorizes the imposition of such liens as follows:

> The court may enforce its orders and decrees by sequestering the rents and profits of the real estate of the obligor against whom such order or decree was issued, if such obligor has any, and such obligor's personal estate and choses in action, and by appointing a receiver thereof, and from time to time causing the same to be applied to the use of the obligee and the children, or by such other lawful means the court deems necessary to assure compliance with its orders, including, but not limited to, the imposition of a lien against the real and personal property of the obligor.

Tenn. Code Ann. § 36-5-103(a)(2)(Supp. 1998).

While we find that the trial court's decision to impose a lien was within its discretion, we agree with the Father that an abuse of discretion exists in the court's decision to encumber both of the Father's pieces of real property with liens. According to the Father's proof, the two properties had a combined equity of $260,000. At the time of trial, the twin boys were nine years old. Assuming child support remains fixed at $800 per month, this amounts to $9,600 per year which totals approximately $86,000 in child support by the time the children reach the age of majority. We find that $260,000 worth of property is an excessive amount with which to secure a projected $86,000 obligation. We therefore modify the trial court's ruling such that a lien remains only upon the Father's rental property which, representing $185,000 in equity, should adequately secure the Father's child support obligation.

## IV.

In his next issue, the Father maintains that the trial court erred in excluding testimony from Jim Harper relating to the truthfulness of the Father's financial records. When asked how he arrived at the figures representing the Father's income, Mr. Harper testified that the Father "gave [him] the check stubs and some bank statements and receipts to indicate what the income items and expense items were and [he] just categorized them." The trial judge then asked Mr. Harper, "[s]o you're not guaranteeing the reliability of these? Only you said you did these from the information supplied by your client?" Mr. Harper responded that this was correct but later he answered that he had no reason to believe the information was incomplete. When asked whether Mr. Harper felt that the information was truthful, the Mother's attorney objected saying that this question called for an opinion. The court sustained the objection as follows:

> Well, you know, he can tell he's truthful, but this is of absolutely no advantage to me because, you know, he's the accountant and it's not an audited thing. He's going to just rely and make a list and maybe file the tax return based solely on the representation made by his client. That's all he can testify because he's not guaranteeing it.

The Father argues on appeal that the court took a role in cross-examining Mr. Harper by noting that he relied on a statement which was not audited and that this called into question the credibility of the Father. It is the Father's position that the court's questions imposed a duty upon the Father's counsel to present information as to the Father's truthfulness pursuant to Rule 608(a) of the Tennessee Rules of Evidence. We disagree finding that the court's line of questioning did not effect an "attack" on the Father's character for truthfulness. The court was merely clarifying the source of the specific financial information upon which Mr. Harper relied to form his testimony.

## V.

In the Father's final issue, he contends that the trial court erred in its award of attorney fees to the Mother. The Father argues that there is no statutory authority for an award of attorney fees in this case. The code provides as

follows:

> The plaintiff spouse may recover from the defendant spouse, and **the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support**, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (Supp.1998) (emphasis added). The Father submits that this section in inapplicable to the instant case as it only authorizes fees incurred in enforcing a decree and enforcing a decree for child support does not include defending an award of child support. The Mother filed an answer to the Father's petition to modify; however, she did not counter-petition to enforce the decree. It is the Father's position that the purpose of this statute was to award attorney fees to those litigants who were required to come into court purely because the obligor parent was not meeting his or her support obligation.

We disagree with the Father's interpretation of section 36-5-103(c) finding that this statute encompasses the attorney fees incurred by a custodial parent in defending the obligor parent's unsuccessful suit to decrease attorney fees. In a similar factual situation, this court has stated that "[i]t is well established that a non-custodial parent may be held liable for legal expenses incurred by the custodial parent in protecting the right of children to support." *Beck v. Beck*, No. 01A01-9710-CV-00547, 1998 WL 136130, at *2 (Tenn. App. 1998) (upholding award of attorney fees to custodial mother in her defense against the father's attempts to reduce child support); *see also Lindberg v. Lindberg*, No. 02A01-9407-CV-00169, 1995 WL 607557 (Tenn. App. 1995) (upholding the trial court's award of partial attorney fees to the custodial parent when the non-custodial parent petitioned for a decrease in child support).

The Father also contends that the court abused its discretion in making this particular award. The courts have wide discretion in awarding attorney fees, and this court will not interfere in the exercise of that discretion in the absence

of a clear showing of abuse. *Salisbury v. Salisbury*, 657 S.W.2d 761, 770 (Tenn. App. 1983). The trial court's award with regard to attorney fees need only be just and equitable under the circumstances. *Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. App. 1992). The Mother's attorney submitted an affidavit showing his total fees and expenses to be $5426.81 and there was neither proof nor allegation that this figure was inaccurate. The court ordered the Father to pay to the Mother's attorney $2500 of these fees and expenses. We find that the court did not abuse its discretion in awarding the Mother's attorney one half of the fees and expenses that were incurred in representing the Mother.

Finally, we address the Mother's request that she be awarded her fees and expenses incurred on appeal. In light of our conclusion that the trial court should not have placed a lien on both of the Father's properties, we do not find that the Father has pursued an unnecessary appeal. Since the Father's appeal was "partially successful," *see Young v. Young*, 971 S.W.2d 386, 393 (Tenn. App. 1997), we deny the Mother's request for an award of her attorney fees and costs on appeal. *See Ford v. Ford*, No. 01A01-9611-CV-00536, 1998 WL 730201, at *6 (Tenn. App. 1998) (denying the mother/appellee attorney fees and costs on appeal where the father/appellant was partially successful in his appeal).

VI.

In conclusion, we affirm the decision of the trial court to disallow a decrease in child support. While we agree with the court's decision that the Father's support obligation be secured by a lien, we find that the court abused its discretion in encumbering both the Father's home and rental property for this purpose. Accordingly, we modify the court's decision such that a lien remains only upon the rental property. The trial court's decisions with regard to the testimony of the witness, Mr. Harper, and with regard to the award of attorney fees are affirmed. Finally, the Mother's request for fees on appeal is denied.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:


_____
BEN H. CANTRELL, P.J., M.S.


_____
PATRICIA J. COTTRELL, JUDGE